## JAMES GLEASON, Petitioner, *versus* AMBROSE SLOPER.

The Court refused to issue a certiorari to a justice of the peace by whom the petitioner had been fined, it appearing that in truth no injustice had been done, although the magistrate had received evidence which he ought to have rejected, decided some questions erroneously, and founded his opinions upon improper grounds.

On a complaint against a member of a company in the militia, for neglect of duty, a roll of the company made out and signed by individuals as selectmen of the town to which the company belongs, (pursuant to *St.* 1825, *c.* 153,) is admissible in evidence, without proof that those individuals were in fact selectmen.

On such a complaint, a letter of the adjutant-general, certifying that the company was without commissioned officers, but not purporting to be a copy of any record or public document, was *held* to be inadmissible in evidence to prove the fact certified.

If a company having no commissioned officer, elects some of its members as officers, whom the commander-in-chief refuses, whether rightfully or wrongfully, to commission, it is still without commissioned officers, so that it is incumbent on the colonel of the regiment to assume the immediate command of the company, pursuant to *St.* 1825, *c.* 153.

A company, in which there was no commissioned officer, elected certain individuals as officers, whom the commander-in-chief, in a general order, refused to commission, but it did not appear that this general order was communicated to the company ; and a member of the company was warned to do duty " in the company commanded by Col. P. C.," who was the colonel of the regiment composed of this and several other companies. It was *held*, that the warning sufficiently described the company in question.

PETITION for a certiorari to Benjamin Adams, a justice of the peace.

Gleason, in his petition, represents, that he was summoned to apperr before the magistrate on the 30th of June, 1834, to ʳnswer ₊o the complaint of Sloper, adjutant of the second regiment, in the first brigade and sixth division of the militia, wherein Sloper, — alleging that he had been specially designated and appointed in writing by Colonel Peter Corbett, colonel of said regiment, to command the company of infantry called the Sutton West company, in Sutton, and within said regiment, at the inn of George A. Tourtellot, in Sutton, on the 17th of September, 1833, at 8 o'clock in the forenoon, at which time and place the members of said company were ordered to meet by order of said colonel, and then and there to train and discipline the said company in the same way and manner, and with the like power and authority, that an officer duly commissioned to command such company might do, said company being then and having been since

the 4th of May, 1833, without any commissioned officer or clerk, and a roll or list of the names of those persons living within the bounds of said company having been returned, on the 9th of the same May, to said colonel, on his requisition therefor, by the selectmen of Sutton, — complained against Gleason, that he, Gleason, being duly borne on said roll or list, and liable to do duty in said company, and being duly notified to meet with said company on the said 17th of September, at the house and place aforesaid, was guilty of the offence of unnecessarily neglecting to appear at said place, &c. and that thereby he had incurred a forfeiture of three dollars.

The petition further represents, that the complaint was entered, and that Gleason appeared and pleaded not guilty ; whereupon a trial took place, and the proofs mentioned below were offered by the complainant, and the objections mentioned below, by Gleason.

1. To prove that Gleason was a member of the Sutton West company and liable to do duty therein, the complainant produced a paper, addressed to the colonel of the regiment, purporting to be a list or roll of the members of the company, and to be signed by certain persons as selectmen of Sutton. Gleason objected that this roll could not be received in evidence, without proof that those persons were selectmen. No such proof was offered by the complainant, but the roll was received in evidence upon the principle stated below.

2. To prove that the company then was, and ever since the 4th of May, 1833, had been, without any commissioned officers or clerk, the complainant offered in evidence, — a letter, signed, "William H. Sumner, Adjutant-General," certifying that on the 1st of May, 1833, there were no commissioned officers in the company, and that none had been commissioned since, — a return of officers elected to fill vacancies in the sixth division of the militia, — and a paper purporting to be a general order of the commander-in-chief. To these documents it was objected, 1. that they ought not to be received in evidence, because they were not legal and competent proof of the facts therein set forth ; and 2. that if the return and general order were to be taken as true, then it thereby in fact appeared that the company had legally chosen

their own officers, and that the commission of such officers had been unlawfully and unconstitutionally withheld, and that therefore the company could not lawfully be assembled and trained under any officer appointed by the commander of the regiment, pursuant to *St.* 1825, *c.* 153. But the magistrate overruled both of these objections upon the principle stated below.

3. It was proved that Corbett was duly commissioned and qualified to act as colonel of the regiment ; that there were thirteen companies of infantry in the regiment ; and that he had no other command or authority except by virtue of his commission as colonel. It was not proved that the general order above mentioned had ever been communicated to the members of the company. It was further proved, that the defendant was warned to appear at the time and place aforesaid, to do duty " in the company commanded by Colonel Peter Corbett ; " and thereupon it was objected, 1. that the description did not identify any particular company in which the military duty was to be performed ; and 2. that the description in the warning did not conform to the complaint, wherein it is alleged that the defendant was warned to do duty " in the Sutton West company in Sutton." But the magistrate overruled these objections upon the principle mentioned below.

The magistrate ruled, that that part of the evidence objected to by Gleason went either to the person of the complainant or the person of the defendant, either directly or indirectly, and by his pleading the general issue those facts were not put in issue, and must have been taken to be true if no evidence had been offered to prove them on the part of the complainant ; that if any allegation in the complaint were not true, the defendant might give any special matter in evidence under this issue, by virtue of the statute, to show that he had not incurred the forfeiture.

It was therefore determined by the magistrate, that Gleason was guilty of the neglect charged against him, and that the complainant should recover of him the sum of three dollars, forfeiture, and costs of suit.

The petitioner alleges that the proceedings before the magistrate were erroneous and ought to be quashed ;

1. Because the magistrate ruled that the pleading of the

Gleason
v.
Sloper.

general issue was an admission of the truth of certain material facts alleged in the complaint.

2. Because there was no legal proof that the list or roll offered in evidence was made by persons who were in fact selectmen of Sutton, and therefore there was no proof of his liability to do military duty in any company.

3. Because there was no sufficient and legal proof that the company was without commissioned officers, as set forth in the complaint.

4. Because the company having lawfully made choice of their own officers, and the commander-in-chief having unlawfully refused to issue commissions to the persons so chosen, the members of the company could not constitutionally be required to do any military duty under officers not of their own election.

5. Because there was no proof that Gleason was warned to appear at said time and place, to do military duty in the company specified in the complaint.

Oct. 7th,
1834.

*Merrick*, for the petitioner.

*Hastings*, for the respondent.

April term
1837.

MORTON J. delivered the opinion of the Court. A petition for a certiorari is always an application to the discretion of the Court. When, in obedience to the writ, the proceedings are certified to us, we are bound to act upon strict legal principles ; and if any error, however unimportant or foreign from the merits of the case, appear, to quash them. But in the exercise of our discretion we examine all the circumstances, and if we find that substantial justice has been done, without violating any important rules of proceeding, we refuse to grant a certiorari, although we may discover some technical or formal errors and some unimportant departures from the correct rules of practice. On this inquiry we always receive extrinsic evidence, not for the purpose of contradicting the record, for if that contains affirmative defects it is incurable, but to supply omissions and to show that there was a more perfect compliance with the rules of law, than the record shows, and that real justice was done between the parties. *Adams, Petitioner*, 4 Pick. 32 ; *New Salem, Petitioners*, 6 Pick. 473 ; *Freetown v. Bristol County Commissioners*. 9 Pick. 50 ; *Cobb v. Lucas*, 15 Pick. 3.

A stronger case for the application of these principles seldom occurs, than the present. For although the magistrate received evidence which he ought to have rejected, decided some questions erroneously, founded his opinions on improper grounds and gave insufficient reasons for them ; yet it will be seen, on further examination, that none of these prejudiced the petitioner, and that in truth no injustice was done him.

1. To prove that the petitioner was duly enrolled, the complainant produced a roll, purporting to be made by the selectmen of Sutton, in obedience to the order of the colonel of the regiment and addressed to him. To this the petitioner, admitting the genuineness of the signature, objected, because it was not proved that the individuals who signed the roll were duly chosen selectmen. But the roll was admitted and we think properly admitted. The selectmen were acting in the capacity of public officers. They were, by statute, made returning officers for this special purpose ; they had returned the petitioner's name on the roll ; it was rightfully placed there ; and the petitioner had no more right to call for evidence of their election than the defendant upon whom a writ had been served, would have, to call for evidence of the appointment of the sheriff who made the return. *Rex* v. *Verelst*, 3 Campb. 432 ; *Taylor* v. *Cooke*, 8 Price, 653 ; 2 Stark. Evid. 373 ; 3 Stark. Evid. 1250 ; *Doty* v. *Gorham*, 5 Pick. 487. But were this doubtful, we would now receive evidence of their election, which the petitioner agrees can be furnished.

2. To prove that the company was " without any commissioned officers," so that the immediate command of it devolved upon the colonel of the regiment, the letter of the adjutant-general to Mr. Hastings was offered. This should have been rejected. It is a mere statement of facts and inferences made by an individual who was not under oath. It does not purport to be a copy of any record or public document ; and a certifying officer is no more competent to make a certificate of facts than any other individual. But the facts satisfactorily appear from other evidence used on the trial ; and the petitioner suffered no injury from the improper admission of this evidence. The general order for an election of all the company officers, shows, by necessary implication, that the offices

were then vacant. And the subsequent order refusing to com·mission those who were elected, shows that they continued to be vacant. The common presumption, that the proceedings of public officers are regular and that they correctly discharged their duty, should apply to the present case. 3 Stark. Evid. 1250 ; *Commonwealth* v. *Fanning*, 14 Mass. R. 290. But whether the governor's omission to grant commissions to those who were chosen was right or wrong, they could not act as officers and were not in fact officers, until they were duly commissioned. The company therefore was " without any commissioned officers." And it became the imperative duty of the colonel to assume the immediate command and to issue his orders to the selectmen, there being no clerk, to return a roll of the company, and " upon receiving such roll," " from time to time to issue his orders to any one or more of the persons whose names are borne thereon," requiring them " to notify the persons named in said order and others liable to do military duty in the company, to appear at the time and place appointed in said order, for any company inspection or training, or any battalion, regimental, brigade or division inspection or review." *St.* 1825, c. 153, § 1.

3. The warning to the petitioner to do duty in the company under the command of the colonel, was sufficiently certain. The object of the warning is to notify the soldier, when, where and in what company, he is required to perform military duty. No other description than what is needed for these purposes, can be required. This order was perfectly understood by the petitioner. He knew what company he belonged to ; he knew the place where he was required to appear ; and he doubtless knew the disorganized state of the company, and that the immediate command had devolved on the colonel. The warning was in the prescribed form ; *St.* 1809, c. 108, § 35 ; and in our opinion was sufficient. *Field, Petitioner*, 9 Pick. 41.

*Petition dismissed.*